**UNITED STATES of America**

v.

**Joseph M. LENA.**

**Civ. A. No. 86–1349.**
**Crim. A. No. 79–213.**

United States District Court,
W.D. Pennsylvania.

Sept. 28, 1987.

David Rothman, Pittsburgh, Pa., for petitioner.

Jeffrey Manning, Asst. U.S. Atty., Pittsburgh, Pa., for respondent.

## OPINION

SIMMONS, District Judge.

Before the Court is a motion to vacate a judgment of sentence and for a new trial filed by defendant, Joseph M. Lena, pursuant to 28 U.S.C. § 2255, on the grounds of ineffective assistance of counsel.

Defendant filed this motion prior to expiration of his parole, therefore, this Court has jurisdiction. *Mabry v. Johnson*, 467 U.S. 504, 507, 104 S.Ct. 2543, 2546 n. 3, 81 L.Ed.2d 437 (1984), *Swanger v. Zimmerman*, 750 F.2d 291, 293, n. 1 (3d Cir.1984).

Defendant Lena was tried before a jury and convicted on two counts of extorting

money from architectural firms in connection with the construction of two school buildings in the Derry Area School District in violation of 18 U.S.C. § 1951, The Hobbs Act.

Defendant cites fourteen factual situations wherein he alleges the ineffective assistance of his counsel and claims that the Court's individual and collective consideration of these fourteen factual situations will establish that the defendant's counsel's errors were so serious that said counsel was not functioning effectively, and hence, defendant was denied effective legal representation contrary to the requirement of the Sixth Amendment to the United States Constitution.

The United States Supreme Court in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), held that the proper standard for the performance of a defendant's attorney in a criminal case is that of reasonably effective assistance. To require reversal of a conviction based on ineffective assistance of counsel, the defendant must show:

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless defendant makes both showings, it cannot be said that the conviction resulted from a breakdown in the adversary process that renders the result unreliable. *Strickland* Id. at page 693, 104 S.Ct. at 2067.

The defendant must also show that counsel's representation fell below an objective standard of reasonableness.

The United States Supreme Court recognized that the purpose of the effective assistance of counsel guarantee of the Sixth Amendment is not to improve the quality of legal representation, but to insure that criminal defendants receive a fair trial. However, the Supreme Court of the United States cautioned against the use of hindsight in assessing an attorney's performance by saying:

"Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to secondguess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. Cf. *Engle v. Isaac,* 456 U.S. 107, 133–134, 71 L.Ed.2d 783, 102 S.Ct. 1558 [1574–75] (1982). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." See *Michel v. Louisiana,* supra [350 U.S. 91], at 101, 100 L.Ed. 83, 76 S.Ct. 158 [164]. There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way."

*Strickland,* Id. at p. 689, 104 S.Ct. at p. 2065.

As hereinabove stated, the United States Supreme Court advanced a two pronged test in *Strickland,* Id at page 693, 104 S.Ct. at page 2067, as follows:

"First, the defendant must show that counsel's performance was deficient", and "second, the defendant must show that the deficient performance prejudiced the defense."

The District Court has granted defendant great latitude to enable him to introduce

evidence to support his allegations of ineffective assistance of counsel.

After a careful review of the voluminous transcripts and the numerous exhibits, this District Court finds that defendant has not met the burden of the *Strickland* test.

Defendant's trial counsel possesses broad experience as a trial attorney. From 1964 to 1968, counsel was associated with a large firm in Allegheny County, Pennsylvania, that specialized in plaintiff's litigation. Also, during that period, defendant's counsel tried a homicide case. In 1968, defendant's counsel moved to Greensburg, Westmoreland County, Pennsylvania, where he engaged in both civil and criminal practice of the law for over eleven years. Defendant's counsel testified that he was placed on a panel of Westmoreland County lawyers and was appointed often by the Westmoreland Court of Common Pleas on what were considered as the more significant cases. Defendant's trial attorney further testified that additionally, he had tried approximately eight to ten criminal cases to a jury verdict in the United States District Court for the Western District of Pennsylvania. Said defendant's trial counsel indicated that his practice since 1968, to the time of defendant's trial, primarily had been the trial of criminal cases.

This Opinion will now address defendant's fourteen contentions.

### 1.

■ Defendant alleges that defense counsel was ineffective in failing to move to have separate trials for each count of the indictment. The first count of the indictment charged that the defendant unlawfully and willfully obstructed, delayed and affected interstate commerce by attempting to and attaining an alleged sum of $8,000.00, from Donald G. Williams and Edmond George Good, Jr., architects in the construction of the Grandview Elementary School; that this alleged sum was obtained by wrongful use of fear and under color of official right by the defendant between July, 1973, and continuing to May, 1977, while the defendant was a member of the Derry Area School Board in Westmoreland County, Pennsylvania. The second count

of the indictment charges that the defendant unlawfully and willfully obstructed, delayed and affected interstate commerce by extortion in that he attempted to and obtained an alleged sum of $5,000.00, from Desmone and Szalai Associates, and Charles L. Desmone, architects for the construction of the Eastern Westmoreland Area Vocational and Technical School, that the alleged sum was obtained by the defendant by the wrongful use of fear and under color of official right between March, 1974, and continuing until 1976, when the defendant was a member of the School Board for the Eastern Westmoreland Area Vocational Technical School and a member of the joint operating committee for this school board.

Defendant argues that the counts of the indictment were unrelated and should not have been tried together and the joinder of the two counts gave the United States an undue advantage at the defendant's trial. Defendant further argues that under the entire circumstances of this case, the Court should have and would have severed the two counts, had defense counsel filed a motion for severance.

Defense counsel admitted that he did not discuss with his client, the defendant, the merits or demerits of trying the counts together. However, defense counsel did assess the strengths and weaknesses of trying both counts simultaneously and decided, "[p]utting them together, I thought you had the chance of knocking Desmone out, with Williams coloring both cases muddy." (H.T. 252) Defense counsel weighed the risk of strengthening the prosecution's case, if the counts were tried simultaneously and made the tactical decision not to seek a separate trial on each count. Under these circumstances, defendant has not established that counsel's performance was deficient. In fact, in retrospect, defense counsel testified, "well, that's a risk, but I'd take it again if I had the chance." (H.T. 252) There is no evidence that defendant's attorney's decision not to move to sever the counts of the indictment for trial, prejudiced the defendant.

**2.**

██ Defendant alleges that his trial counsel was ineffective in that said counsel generally failed to prepare for trial and that he, said counsel, improperly failed to obtain available facts from the Government by pre-trial discovery.

During the preliminary interviews between defendant and his counsel prior to trial, defendant informed counsel that defendant, did not receive the payments from Williams and Desmone that were alleged in the two counts of the indictment. Defendant's trial counsel was asked at pages 246–247, of the post trial hearing transcript:

Q. Certainly in cross-examining Williams and Desmone, the two primary witnesses, you would try to fix, to the best of your ability, the dates, times and places of payments, and if they couldn't remember, that would affect their credibility, right, is that correct?

A. No. I disagree with you there, Mr. Rothman. I thought that part of the inherent problem of the Government's witnesses was that they were sufficiently vague that it would reflect adversely on their credibility, and I intended to play on that, as opposed to trying to nail them down and getting them to give a specific date. I thought I gained more by showing that these people, for having given what they alleged to be substantial sums of money were awfully vague and general, and hopefully, the jury would believe, therefore, that they were not worthy of belief.

Q. If you got specific dates, though, before trial, by way of discovery, if you couldn't provide an alibi, you would still have the advantage of showing the vagueness, wouldn't you?

A. No. if I got specific dates before the trial, I wouldn't have the advantage of vagueness.

This Court concludes that the assessment made by defendant's counsel was a strategy judgment call that defendant's counsel was compelled to make. Although defendant in hindsight, was dissatisfied with the results, his counsel's action was not legally ineffective in this case. In fact, the inability of defendant's counsel to obtain more specific information from Desmone and Williams during the trial proceedings reinforces the soundness of defendant's counsel's decision prior to trial to avoid requesting a bill of particulars. Again counsel's conduct falls within the proper range of reasonable professional assistance.

**3.**

Defendant alleges that his counsel was ineffective by engaging in irrelevant and unproductive cross-examination during his trial. As an example defendant contends that his counsel permitted repetitive testimony; that his counsel failed to pursue lines of inquiry when examining government witnesses and that his counsel failed to use available exhibits to properly impeach witnesses. This District Court has reviewed all of the trial testimony, examination and cross-examination and the numerous trial exhibits and concludes that defendant's trial counsel was not ineffective and unproductive in his cross-examination. To the contrary, defendant's counsel acted in an experienced and knowledgable manner in dealing with the various evidentiary issues raised by the indictment. Defendant's counsel did attack the credibility of the government's witnesses, both in cross-examination and in his closing argument to the jury. The fact that the jury chose to believe the government's witnesses instead of the defendant and his witnesses cannot be attributed to a deficiency in trial counsel's performance. Here again, defendant has failed to show that his trial counsel's performance was deficient in any way.

**4.**

██ Defendant alleges that his counsel was ineffective by failing to properly investigate and then raise defendant's alibi defense at the trial of the case. The alibi was relative to the government's contention that an alleged extortion payment was received on a certain Friday afternoon in April, 1977, in Harrisburg, Pennsylvania,

and defendant claimed he was working at his regular employment that day. The evidence introduced was inconclusive as to which Friday in April, 1977, the transaction occurred. Defendant's records were also inconclusive as to whether or not the defendant worked at his regular employment each and every Friday in April, of 1977. Defendant's counsel properly refused to attempt to raise an alibi defense on a mere speculation that the proposed alibi might find defendant at work and not in Harrisburg on the day in question. Here again, the defendant's counsel acted wisely and properly under the circumstances. Defendant was well represented on this issue.

### 5.

■ Defendant alleges that his counsel was ineffective by failing to summon available witnesses to establish defendant's inability to influence the other school board members. Defendant alleges evidence of his lack of influence over other board members was relevant to prove circumstantially, that defendant was innocent. This Court in its opinion, in this very case, *United States v. Lena*, 497 F.Supp 1352, 1357 (which Opinion was sustained by the United States Court of Appeals, 649 F.2d 861, 3d Cir.1981) held that the government's evidence did not have to show that the defendant was in fact able to influence the Derry Area School Board or the Vo-Tech School Board in order to be found guilty of extortion. This Court cited *United States v. Mazzei*, 521 F.2d 639, 643–644 (3d Cir. 1975) *cert. denied*, 423 U.S. 1014, 96 S.Ct. 446, 46 L.Ed.2d 385 (1975). If a public official such as defendant acted under color of his official office, it is not necessary to establish the official's actual power to carry out his threat. A wrongful use of a public office is made out when the public official exploits a reasonable belief on the part of his victim that the power to carry out the extortionate threat exists. Proof of defendant's actual lack of influence was irrelevant because, to prove a Hobb's Act violation the government had only to prove that defendant acted under color of authority and not that he had actual authority to control his fellow School Director's actions.

Here again it is clear that defendant's counsel rendered reasonable professional assistance, under the circumstances.

### 6.

■ Defendant alleges that his counsel conducted an ineffective examination of the witness Bergman and failed to impeach Bergman's credibility by not presenting available witnesses as to Bergman's poor reputation for honesty and truthfulness. To the contrary, defendant's counsel did attempt to impeach Bergman by calling as a defense witness the Superintendent of Schools, Robert Scalpello, who contradicted Bergman's testimony by reciting a ten year history of the District's contractual relationship with Bergman on a year-by-year basis, which tended to create doubt as to the credibility of Bergman's testimony. The question as to whether Bergman's testimony was truthful could only be resolved by the jury verdict. Defendant's counsel's decision not to call additional witnesses to impeach Bergman was trial strategy which fell clearly within the acceptable range of reasonable professional assistance.

### 7.

■ Defendant alleges that his counsel was ineffective by failing to object to certain alleged improper cross-examination of the defense witness Fidei, by the prosecution. Fidei was cross examined by the government regarding the purchase of his property by the School Authority at a price three times that which Fidei paid for it and at a time when the defendant was treasurer of the School Authority.

This Court is of the opinion that the government's questions to Fidei were proper to test Fidei's credibility and to show whether Fidei had a bias or interest in favor of defendant. The question put to Fidei by the government were not legally objectionable and it would have been futile for defendant's counsel to object to the government's cross examination of said witnesses.

Again, defendant's counsel acted within the accepted range of reasonable professional assistance.

### 8.

■ Defendant alleges that his counsel was ineffective by improperly inquiring of defendant's wife as to whether the defendant might be supporting another woman. Defendant also contends that his counsel acted ineffectively by not fore-warning defendant's wife as to these questions concerning their marital relationship. However, defendant's counsel had ascertained prior to his examination of defendant's wife that she and defendant had a good marital relationship and that "there was no possibility that Mr. Lena was out doing things behind her back." (H.T. 133)

The Court immediately recognized that the questions posed to Mrs. Lena were questions based on the defense counsel's intuitive judgment that posing said questions to Mrs. Lena would be beneficial to defendant by inferentially indicating that defendant was not in need of extortion money in order to support another woman and hence, defendant had no monetary motive for extortion. Perhaps it can be plausibly argued that these questions did not help defendant's cause, however, it is difficult to see how defendant was harmed by them. This Court is of the belief that defendant was certainly not prejudiced by these questions. As the Supreme Court stated in *Strickland,* the standard for measuring counsel's performance is "that of reasonably effective assistance." 466 U.S. at 687, 104 S.Ct. at 2064.

### 9.

Defendant alleges that trial counsel was ineffective because he failed to prepare defendant's reputation witnesses adequately prior to trial and defendant's counsel failed to object to improper cross-examination of said witnesses. Counsel testified that he had talked with the defendant's character witnesses prior to their testifying at trial. This District Court liberally allowed these witnesses to testify as to their opinion of Mr. Lena's good reputation. (H.T. 308) This District Court further opined at page 312 of the hearing transcript, "As a matter of fact, Mr. Rothman, I think, Mr. Galloway, (defendant's counsel) did a good job in getting all this evidence in, under the circumstances." Again, in this instance, this District Court can find no objectionable cross examination of the defendant's character witnesses by the government which improperly prejudiced the defendant's case.

Also, in this instance, defense counsel's representation of the defendant at the criminal trial clearly falls within the acceptable range of reasonable professional assistance.

### 10.

■ Defendant alleges that trial counsel was ineffective because he failed to offer defendant as a witness in surrebuttal to refute the testimony of the witnesses Tarr and Oleszewski. Defendant at the trial of the criminal case presented 35 character witnesses on his behalf who testified that defendant had a good reputation for honesty. Tarr and Oleszewski were the only witnesses called by the government to rebut the defendant's character witnesses. Tarr's testimony was equivocal as to whether defendant's reputation for honesty was good or bad. Tarr was asked by the United States Attorney:

Q. Do you know what Mr. Lena's reputation for for being a law abiding citizen?

A. As far as I know, I don't know of him being in any bad relationships.

Q. Mr. Tarr, were you on the school board during the time Mr. Lena was?

A. Yes

Q. Did anyone control the school board at that time?

A. Mr. Lena had a lot to say. He was quite prominent. (T.T. 488–489)

Oleszewski testified that defendant had a reputation for being more dishonest than honest. (T.T. p. 501) However, Oleszewski also testified that the last seven or eight years that defendant was on the school board that defendant ran a pretty good ballgame. Oleszewski credited the quality of the Derry Area School System during defendant's tenure as School Board President with seven of his eight children graduating and going to college. On balance this government testimony tended to

help the defendant's case. In any event said government evidence was properly admitted at the trial of the case.

During cross-examination by defendant's counsel, evidence was evinced from Oleszewski reflecting his personal bias against defendant for defendant having been responsible for Oleszewski allegedly being discharged as football coach. At this juncture of the case, defendant requested his attorney to rebut Oleszewski's testimony by calling the defendant himself to the witness stand.

The matter of surrebuttal was "hotly talked about" by defendant and counsel. Defendant testified that he told defense counsel repeatedly during the testimony of the witness Oleszewski that he could rebut and impeach Oleszewski's testimony about defendant's election and about the circumstances of Oleszewski's discharge as football coach. Defense counsel testified that he and defendant after their discussions decided against surrebuttal. (H.T. 319) Here again, this decision of defendant's attorney as how to treat Oleszewski's testimony was a matter of reasonable trial strategy.

Under the aforestated circumstances, the decision not to have defendant testify in surrebuttal regarding the testimony of Tarr and Oleszewski was sound, because defense counsel was able to logically argue that the government's rebuttal testimony was not believable in his closing argument to the jury, which probably was the most effective manner for presenting defendant's case.

Therefore, counsel did meet again the standard of reasonably effective performance under these circumstances.

### 11.

■ Defendant alleges that trial counsel was ineffective because he failed to attempt to impeach the proposed government witness, Belonish. Defendant contends that defendant's counsel improperly showed the government a threatening letter received by Mr. Scapello, Superintendent of Schools, from Belonish that indicated that Belonish could be effectively impeached. Belonish did not testify at the

trial so there was no need to attempt to impeach him. In fact, defendant's attorney exhibited unusual skill in trial tactics by showing Belonish's threatening letter to the government prior to trial, since said strategy effectively pursuaded the government not to call said Belonish as a witness in the first place, and the need for impeachment was rendered unnecessary. Defense counsel's representation of the defendant clearly falls within the acceptable range of reasonable professional assistance.

### 12.

■ Defendant alleges that trial counsel was ineffective because he failed to properly prepare for jury selection, in that trial counsel failed to submit proposed jury voir dire questions to the court prior to jury selection in order to establish possible bias against defendant regarding alleged official corruption. Defendant's counsel testified, "... that you'll never know whether a member of the jury panel has ever been shaken down, or been the shaker. Those are items that you're not able to get out from the jury." (H.T. 259) Defendant's counsel said he could not think of a question regarding official corruption that would cause a potential juror to evince a bias against the defendant.

Defendant also alleges that his trial counsel was ineffective because of his counsel's failure to request the Court to strike for cause, juror Harold Cornell, the Pitney Bowes salesman, who sold equipment to the United States Government. This Court concludes that defendant's challenge is the exercise of hindsight or second guessing, which the Supreme Court in *Strickland* cautioned against. See 466 U.S. at 694, 104 S.Ct. at 2068. Juror Cornell's response to the voir dire questions put to him, certainly indicated that he would act in a fair and impartial manner. This Court finds that defendant's trial counsel's conduct in the jury selection process was clearly within the range of reasonable professional assistance under all of the circumstances of this case.

### 13.

■ Defendant alleges that his trial counsel was ineffective because he failed to request a cautionary instruction in the charge to the jury as to the weight the jury should give to the testimony of immunized witnesses and to otherwise take exception to the court's charge to the jury. Notwithstanding counsel's failure to request a cautionary instruction relative to immunized witnesses, the jurors were clearly made aware of the fact that Desmone and Williams were granted immunity. (T. 117, 300) The District Court instructed the jury to consider the circumstances of the testimony of each witness as well as the motive and interest of each witness in the outcome of the case. (T. 463) Under the circumstances of this Court's charge as above stated, a cautionary instruction would be unnecessary. In fact, it can be argued that such an instruction would have been harmful to the defendant since by emphasizing the fact of witness immunity, the jury could be led to believe inferentially that an immunized witness would be more likely to tell the truth than a witness who was implicated in a criminal scheme and who testified without immunity. The failure to request such a "cautionary charge" might be considered sound trial stategy under the circumstances. In any event there is no evidence in light of this Court's charge as to how the jury was to assess the credibility of witnesses, that the defendant was in any way prejudiced by the defense attorney's failure to ask for said cautionary instruction.

### 14.

Defendant alleges that trial counsel was ineffective because he failed to file a Petition for Writ of Certiorari to the United States Supreme Court and that he is therefore entitled to vacation of his conviction. Defendant cites *United States v. Mazzei*, 521 F.2d 639 (3rd Cir.1975), *cert denied*, 423 U S. 1014, 96 S.Ct. 446, 46 L.Ed.2d 385 (1975) for the proposition that a Petition for Writ of Certiorari possibly might be granted under the facts peculiar to this case. The government in opposition to defendant's claim responds that (1) Lena failed to establish as a fact that defense counsel missed the appeal period; (2) the issues to be raised in a Petition for Writ of Certiorari were meritless and (3) the proper relief, where counsel is ineffective due to failure to file an appeal, is the granting of leave to file out of time.

In *United States v. Lauga*, 762 F.2d 1288, (5th Cir.1985) *cert. denied*, 474 U.S. 860, 106 S.Ct. 173, 88 L.Ed.2d 143, defendant claimed ineffective assistance of counsel because his attorney did not seek a Writ of Certiorari from the Supreme Court. In the *Lauga* case, the Fifth Circuit Court of Appeals found that the suggestion that Defendant Lauga's conviction was constitutionally infirm because his attorney did not file a Petition for Certiorari totally devoid of merit. *Lauga* at 1291.

■ In the instant case, this Court has made a thorough review of all the evidence defendant has raised in his challenges to his conviction through post trial motions and his motion to vacate judgment of sentence and for a new trial. This Court, as the Court in *Lauga*, finds that defendant's argument that his conviction is constitutionally infirm because his defense counsel did not file a Petition for Writ of Certiorari "devoid of merit". To do otherwise would open the door for numerous appellants with meritless constitutional claims to seek reversal merely by having their counsel fail to file for a Writ of Certiorari.

The defendant in this case knew or should have known that the time limitation for filing a Writ of Certiorari to the United States Supreme Court had been missed by one day on or about June 8, 1981. (January H.T. 208–210) The only course of action pursued by Defendant thereafter was to consult with other attorneys about a legal malpractice action against his defense counsel.

■ It is this Court's opinion that it has no jurisdiction to determine whether certiorari would or would not have been granted by the United States Supreme Court. Furthermore, this Court has no known authority to vacate defendant's sentence in this action on the premise that

some slight or great probability existed that the United States Supreme Court would have granted certiorari.

After consideration of all the testimony, all the exhibits and all of the argument on all of the issues raised by defendant, this District Court concludes that defense counsel did provide the defendant with reasonably effective legal assistance in the defense of his case and that said defense counsel of the defendant was functioning properly as "counsel" as the same is guaranteed by the Sixth Amendment of the United States Constitution. Defendant's motion to vacate judgment of sentence and his motion for a new trial is denied.

An appropriate Order will be entered.